1
2
3
4
5

KILPATRICK TOWNSEND & STOCKTON LLP
DENNIS L. WILSON (Bar No. 155407)
DWilson@kilpatricktownsend.com
CAROLINE Y. BARBEE (Bar No. 239343)
CBarbee@kilpatricktownsend.com
1801 Century Park East Suite 2300
Los Angeles, CA  90067
Telephone:   310-248-3830
Facsimile:   310-860-0363

6
7

Attorneys for Plaintiff
META PLATFORMS, INC.

8
9
10

BAKER BOTTS L.L.P.
SARAH GUSKE (Bar No. 232467)
Sarah.Guske@bakerbotts.com
101 California Street, Suite 3200
San Francisco, CA 94111-5802
Telephone: 415.291.6205
Facsimile: 415.291.6305

11
12
13
14

SUZANNE HENGL (admitted pro hac vice)
Suzanne.Hengl@bakerbotts.com
30 Rockefeller Plaza, 45th Floor
New York, NY 10112
Telephone: 212.408.2522
Facsimile: 212.259.2522

15
16

Attorneys for Plaintiff
CHIME FINANCIAL, INC.

17
18

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

19
20
21
22
23
24
25
26
27

META PLATFORMS, INC., a Delaware
corporation, and CHIME FINANCIAL, INC.,
a Delaware corporation,

        Plaintiffs,

        v.

ARAFAT ENIOLA AROWOKOKO (aka
ENNY HORLAR DC) and AROWOKOKO
AFEEZ OPEYEMI (aka CLASSIC RG
LEKKI SPENDER aka RG LEKKI aka
ABDUL AFEEZ OPEYEMI),

        Defendants.

CASE NO.:  4:22-cv-00803-DMR
*Hon. Donna M. Ryu*

**PLAINTIFFS' MOTION FOR DEFAULT**
**JUDGMENT [FED. R. CIV. P. 55(B)(2)]**

Date:   February 23, 2023
Time:   1:30 p.m.
Dept.:   Courtroom 4, Third Floor


Complaint Filed:  February 8, 2022
Trial Date:   TBD

28

MOTION FOR DEFAULT JUDGMENT
CASE NO.:  4:22-cv-00803-DMR

1

## <u>TABLE OF CONTENTS</u>

2    NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT .................................... i

3    MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

4        I.     INTRODUCTION ..............................................................1

5        II.    STATEMENT OF FACTS ..................................................2

6            A.    Background on the Facebook and Instagram Platforms .......................2

7            B.    Meta's Terms and Measures to Help Businesses Facing
8                  Harm On Its Platforms ...............................................2

9            C.    Chime's Trademark Rights and Measures to Protect
              Intellectual Property ................................................4

10           D.    Defendants' Phishing Scheme ........................................5

11           E.    Defendants' Agreement to Meta Terms and Breaches
12                 Thereof ...........................................................5

13           F.    The Filing of this Action and Subsequent Entry of
              Default ...........................................................7

14       III.   DEFAULT JUDGMENT IS WARRANTED .................................7

15           A.    The Court Has Jurisdiction to Enter Default Judgment .........................8

16           B.    The Eitel Factors Weigh Heavily in Favor of Default
17                 Judgment ........................................................14

18           C.    Plaintiffs are Entitled to Injunctive Relief, Damages,
              Profits, Fees, and Costs ............................................21

19       IV.   CONCLUSION ..............................................................25

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

**Cases**

*Action Embroidery v. Atl. Embroidery,*
    368 F.3d 1174 (9th Cir. 2004)...................................................................................... 13

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)........................................................................................ 16

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
    457 F.3d 1062 (9th Cir. 2006)...................................................................................... 17

*Baskin-Robbins Franchising LLC v. Pena,*
    No. 19-cv-06657-JSC, 2020 WL 2616576 (N.D. Cal. May 7, 2020) ......................... i, 2, 14, 20, 21

*Brayton Purcell LLP v. Recordon & Recordon,*
    575 F.3d 981 (9th Cir. 2009)........................................................................................ 10

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)..................................................................................................... 11

*Calder v. Jones,*
    465 U.S. 783 (1984)..................................................................................................... 11

*Century 21 Real Est. Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988)................................................................................ 18, 21

*Christofferson v. All Pure Pool Serv. of Cent. California, Inc.,*
    2020 WL 3249323 (E.D. Cal. June 16, 2020)............................................................. 14

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.,*
    No. 5:20-cv-04773-EJD, 2020 WL 5199434 (N.D. Cal. Aug. 17, 2020)................... 22

*Coach, Inc. v. Diana Fashion,*
    No. 11-2315 SC, 2011 WL 6182332 (N.D. Cal. Dec. 13, 2011)................................ 20

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F.2d 190 (3d Cir 1983)............................................................................................ 9

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    653 F.3d 1066 (9th Cir. 2011).......................................................................... 10, 12, 13

*Craigslist, Inc. v. Naturemarket, Inc.,*
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) .................................................... 14, 15, 18, 19

*Craigslist, Inc. v. RealWorks Grp. LLC,*
    No. C 08-05072 JW, 2009 WL 10692489 (N.D. Cal. Oct. 29, 2009) ........................ 22

*Distinct Media Ltd. v. Shutov,*
    2017 WL 1234400 (N.D. Cal. Mar. 10, 2017)............................................................ 14

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.,*
    749 F. Supp. 2d 1038 (N.D. Cal. 2010) ...................................................................... 14

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)..................................................................................................... 21

*Eitel v. McCool,*
    782 F.2d 1470 (9th Cir. 1986).................................................................. i, 1, 8, 19, 20, 21

*Facebook, Inc. v. Banana Ads LLC,*
    No. CV 11-03619-YGR (KAW), 2013 WL 1873289 (N.D. Cal. Apr. 30, 2013) ........ 12

*Facebook, Inc. v. Grunin,*
    77 F. Supp. 3d 965 (N.D. Cal. 2015) .................................................... 18, 23, 24, 25

*Facebook, Inc. v. Kokhtenko*, No. 21-cv-03036-YGR (LB), 2021 WL 7448619 (N.D. Cal. Dec. 3, 2021) report and recommendation adopted as modified by No. 21-cv-03036-YGR, 2022 WL 1195439 (N.D. Cal. Feb. 18, 2022) ................................................................................ 20, 23, 24

*Facebook, Inc. v. Sahinturk*,
2022 WL 1304471 (N.D. Cal. May 2, 2022) ............................................................................ 21

*Facebook, Inc. v. Sluchevsky*,
2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ................................................................ 9, 11, 24

*Fair Hous. of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) .................................................................................................... 15

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) adopted, No. 19-CV-06657-LHK, 2020 WL 2614851 (N.D. Cal. May 22, 2020) ............................................................................................................................ i

*Giotta v. Ocwen Fin. Corp.*,
No. 15-cv-00620-BLF, 2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) ...................................... 10

*Google, Inc. v. Eolas Techs. Inc.*,
Nos. 13-cv-05997-JST, 13-cv-06003-JST, 2014 WL 2916621 (N.D. Cal. June 24, 2014) .......... 11

*Gucci Am. v. Wang Huoqing*,
No. C-09-05969 JCS, 2011 WL 31191 (N.D. Cal. Jan. 3, 2011) .............................................. 15

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*,
784 F.2d 1392 (9th Cir. 1986) .................................................................................................. 13

*Henderson v. Fisher*,
236 Cal. App. 2d 468 (1965) .................................................................................................... 24

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ...................................................................................................... 9

*In re W. States Wholesale Nat'l Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ................................................................................................. 9, 10

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945) .................................................................................................................. 10

*Learjet Inc. v. Oneok, Inc.*,
715 F.3d 716 (9th Cir. 2013) .................................................................................................... 13

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
658 F.3d 936 (9th Cir. 2011) .................................................................................................... 15

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ....................................................................................................................... 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ...................................................................................................... 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .................................................................................................. 12

*Microsoft Corp. v. Buy More, Inc.*,
703 F. App'x 476 (9th Cir. 2017) .............................................................................................. 15

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) .................................................................................. 13, 14

*Nissan Motor Co. v. Nissan Comput. Corp.*,
89 F. Supp. 2d 1154 (C.D. Cal. 2000) ...................................................................................... 13

*Panavision Int'l, L.P. v. Toeppen*,

141 F.3d 1316 (9th Cir. 1998)......................................................................................... 10

*Penpower Tech. Ltd. v. S.P.C. Tech.*,
627 F. Supp. 2d 1083 (N.D. Cal. 2008) ....................................................................... 20

*Polo Fashions, Inc. v. Craftex, Inc.*,
816 F.2d 145 (4th Cir. 1987).......................................................................................17

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
13 F.3d 1297 (9th Cir.1994) rev'd on other grounds by 514 U.S. 159 (1995) ............ 16

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991).......................................................................................22

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004).......................................................................................10

*Stackla, Inc. v. Facebook Inc.*,
2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ........................................................... 22

*Tamarind Lithography Workshop, Inc. v. Sanders*,
143 Cal. App. 3d 571 (1983)..................................................................................23, 24

*Tech. LED Intell. Prop., LLC v. Revogi, LLC*,
No. 18-cv-03827-JSC, 2019 WL 2716610 (N.D. Cal. June 27, 2019) .........8, 15, 19, 20

*Transgo, Inc. v. AJAC Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985).....................................................................................17

*Twitch Interactive, Inc. v. Johnston*,
No. 16-cv-03404-BLF, 2019 WL 3387977 (N.D. Cal. July 26, 2019)....................23, 25

*UL LLC v. Space Chariot Inc.*,
250 F. Supp. 3d 596 (C.D. Cal. 2017) .......................................................................17

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
108 F. Supp. 3d 816 (N.D. Cal. 2015) ..........................................................................8

*Union Oil Co. of Cal. v. Greka Energy Corp.*,
165 Cal. App. 4th 129 (2008) .....................................................................................23

*Viet. Reform Party v. Viet Tan - Viet. Reform Party*,
416 F. Supp. 3d 948 (N.D. Cal. 2019)......................................................................8, 21

*Wecosign, Inc. v. IFG Holdings, Inc.*,
845 F. Supp. 2d 1072 (C.D. Cal. 2012) .....................................................................20

*Wilens v. Doe Def. No. 1*,
No. 3:14-cv-02419-LB, 2015 WL 4606238 (N.D. Cal. July 31, 2015).........................2

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006)................................................................................11, 12

*Yelp Inc. v. Catron*,
70 F. Supp. 3d 1082 (N.D. Cal. 2014) ......................................12, 13, 18, 19, 20

*Zest Anchors, LLC v. Geryon Ventures, LLC*,
2022 WL 2811646 (S.D. Cal. July 18, 2022) .............................................................16

**Statutes**

15 U.S.C. § 1114(1) ...........................................................................................................15

15 U.S.C. § 1116(a) ...........................................................................................................21

15 U.S.C. § 1125(a) .....................................................................................................17, 18

15 U.S.C. § 1127 ................................................................................................................15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28 U.S.C. § 1331 ................................................................................................................. 8

28 U.S.C. § 1332 ................................................................................................................. 8

28 U.S.C. § 1367 ................................................................................................................. 8

Cal. Civ. Code § 3422(a) ................................................................................................... 23

Cal. Civ. Code §§ 3422, 3423(e) ...................................................................................... 23

**Rules & Regulations**

Fed. R. Civ. P. 12(a)(1)(A)(i) .............................................................................................. 7

Fed. R. Civ. P. 4(f)(2)(C) .................................................................................................. 14

Fed. R. Civ. P. 54(c) ......................................................................................................... 21

Fed. R. Civ. P. 55(a) ...................................................................................................... 1, 7

Fed. R. Civ. P. 55(b) ........................................................................................................... 7

Fed. R. Civ. P. 55(b)(2) ....................................................................................................... i

<u>**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**</u>

**PLEASE TAKE NOTICE** that on February 23, 2023 at 1:00 p.m. or as soon thereafter as this matter may be heard before the Honorable Donna M. Ryu in Courtroom 4, Third Floor, of this Court located at 1301 Clay Street, Oakland, California, 94612, Plaintiffs Meta Platforms, Inc., and Chime Financial, Inc., will move this court for entry of a default judgment against Defendants Arafat Eniola Arowokoko and Arowokoko Afeez Opeyemi, pursuant to Federal Rule of Civil Procedure 55(b)(2).

This Motion is made on the grounds that: (1) service by alternative means was properly effected on Defendants pursuant to the Court's order granting Plaintiffs leave to serve defendant Arafat Eniola Arowokoko with process by email at qiawxn3554@camrew.com and defendant Arowokoko Afeez Opeyemi with process by email at lekkispender@gmail.com;  (2) a default has been entered against Defendants based on their failure to respond to the Complaint or otherwise appear in the action; (3) the Court has jurisdiction over the claims and parties; (4) all of the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986), favor entering default judgment; and (5) a permanent injunction is necessary to prevent the irreparable harm caused by Defendants' phishing scheme, which, by virtue of the default, is deemed admitted by Defendants.  *See Baskin-Robbins Franchising LLC v. Pena*, No. 19-cv-06657-JSC, 2020 WL 2616576, at *1 (N.D. Cal. May 7, 2020) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)), *adopted*, No. 19-CV-06657-LHK, 2020 WL 2614851 (N.D. Cal. May 22, 2020).

This motion is based upon this Notice, the following Memorandum of Points and Authorities, the Declarations of Caroline Y. Barbee, Andrew Herter, and Michael Duffey, filed concurrently herewith, all pleadings and papers on file, and such oral argument as may be heard at the hearing on this Motion.

1    DATED:  January 18, 2023      Respectfully submitted,

2                           KILPATRICK TOWNSEND & STOCKTON LLP

3

4                           By: */s/ Caroline Y. Barbee*
                                DENNIS L. WILSON

5                                CAROLINE Y. BARBEE

6                           Attorneys for Plaintiff
                           META PLATFORMS, INC.

7

8    DATED:  January 18, 2023      Respectfully submitted,

9                           BAKER BOTTS L.L.P.

10

11                        By: */s/ Sarah Guske*
                                SARAH GUSKE

12                                SUZANNE HENGL

13                         Attorneys for Plaintiff
                       CHIME FINANCIAL, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**     <u>**INTRODUCTION**</u>

3

4

5

6

On February 8, 2022, Plaintiffs Meta Platforms, Inc. ("Meta") and Chime Financial, Inc. ("Chime") (collectively, "Plaintiffs") brought this action in response to Defendants Arafat Eniola Arowokoko and Arowokoko Afeez Opeyemi's (collectively, "Defendants") unlawful online impersonation scheme directed at Meta and Chime users.

7

8

9

10

11

12

13

14

15

16

17

18

Since at least March 2020, and continuing until at least October 2021, Defendants—who reside in Nigeria—engaged in a phishing scheme whereby they impersonated Chime on Meta's platforms in order to obtain the login information for Chime member accounts.  Compl. ¶¶ 1, 49.  In particular, Defendants used a network of Chime-branded Facebook and Instagram accounts to impersonate Chime in violation of Facebook and Instagram's terms and policies.  These accounts used Chime-branded usernames, domains, and/or profile photos, all without Chime's authorization.  *Id.* ¶ 49.  Defendants also used these Chime-branded Instagram accounts to direct users to Chime-branded phishing websites, again without Chime's authorization.  *Id.* ¶¶ 50-51, 54-55.  These phishing websites prompted users to enter their Chime usernames and passwords with the goal of compromising users' Chime member accounts to withdraw funds.  *Id.* ¶ 45-46.  By using Meta's platforms to impersonate Chime, Defendants are harming the Chime and Meta brands, and the millions of consumers who have come to trust them.

19

20

21

22

23

Despite being served with process via email pursuant to this Court's September 3, 2022, Order (Dkt. No. 22), Defendants have failed to appear in this action or otherwise respond to Plaintiffs' allegations in the Complaint.  On October 20, 2022, the Clerk entered default against Defendants under Federal Rule of Civil Procedure 55(a), and Defendants have not moved to set it aside.  Dkt. No. 29.  Accordingly, Plaintiffs now seek default judgment against Defendants.

24

25

26

27

As shown below, this Court has jurisdiction to enter default, and all of the factors enumerated by the Ninth Circuit in *Eitel*, 782 F.2d 1470, heavily favor granting Plaintiffs' motion. Plaintiffs are also entitled to the requested permanent injunction, which is necessary to prevent Defendants' illegal activities.  Default judgment should therefore be entered.

28

/ / /

## II.   **STATEMENT OF FACTS**

After entry of default, "the well-pleaded factual allegations in [Plaintiffs'] complaint, except those concerning damages, are deemed to have been admitted by the non-responding party." *Baskin-Robbins*, 2020 WL 2616576, at *1.  The Court thus can and should "accept[] the [] allegations as true."  *Id.*  A party moving for default judgment may also supplement the factual record with sworn declarations.  *See Wilens v. Doe Def. No. 1*, No. 3:14-cv-02419-LB, 2015 WL 4606238, at *3 (N.D. Cal. July 31, 2015).

### A.   **Background on the Facebook and Instagram Platforms**

Facebook is a social networking platform that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.  Compl. ¶ 17.  As of December 2021, Facebook's daily active users averaged 1.93 billion and monthly active users averaged 2.91 billion, worldwide.  *Id.*  Instagram is a photo and video sharing service, mobile application, and social network that, among other things, allows users to send and receive direct messages to and from other users.  *Id.* ¶ 18.  As of 2020, Instagram had over one billion active accounts worldwide.  *Id.*  At all times relevant to this action, Plaintiff Meta Platforms, Inc. (formerly known as Facebook, Inc.) has operated Facebook and Instagram.  *Id.* ¶ 19.

### B.   **Meta's Terms and Measures to Help Businesses Facing Harm On Its Platforms**

All Facebook users agree to Facebook's Terms of Service ("Facebook TOS") and other rules that govern access to and use of Facebook, which also include the Facebook Community Standards.  Compl. ¶ 20.  Similarly, all Instagram users agree to the Instagram Terms of Use ("Instagram TOU") and to other rules that govern access to and use of Instagram, including the Instagram Community Guidelines (the Instagram TOU together with the Instagram Community Guidelines, the Facebook TOS and the Facebook Community Standards, are collectively referred to hereafter as the "Meta Terms").  *Id.* ¶ 21.  Since April 2018, the Instagram TOU have stated that the Instagram TOU constitutes an agreement between Instagram users and Facebook, Inc., now known as Meta.  *Id* ¶ 19.

With respect to the Facebook TOS, Section 3.1 requires users to "[u]se the same name that [they] use in everyday life," "[p]rovide accurate information about [them]self," "[c]reate only one

account ([their]) own)" and use that account "for personal purposes," and prohibits users from using Facebook if Meta "previously disabled [a user's] account for violations of [the TOS] or [Facebook] Policies." Compl. ¶ 22; Declaration of Michael Duffey ("Duffey Decl.") ¶ 7, Exs. 1-4. Section 3.2.1 prohibits users from: (a) doing anything "unlawful, misleading, [] or fraudulent"; (b) doing anything that "infringes or violates someone else's rights, including their intellectual property rights"; and (c) "violat[ing] [the Facebook TOS], [Facebook] Community Standards, and other Terms and Policies that apply to [a user's] use of Facebook." Compl. ¶ 23; Duffey Decl. ¶ 7, Exs. 1-4. The Facebook Community Standards expressly prohibit "deceiving others to generate a financial or personal benefit to the detriment of a third party or entity through . . . financial scams." Compl. ¶ 24; Duffey Decl. ¶ 8, Exs. 5-12. The Community Standards further prohibit users from "impersonat[ing] others by . . . creating an account assuming to be or speak for another person or entity." *Id.* ¶ 9, Exs. 13-17.

As for the Instagram TOU, those terms prohibit users from (a) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose"; (b) "do[ing] anything that violates someone else's rights, including intellectual property"; (c) "attempt[ing] to create accounts or access or collect information in unauthorized ways," "includ[ing] creating accounts or collecting information in an automated way without our express permission"; (d) "violat[ing] . . . [Instagram] Terms or [Instagram] policies"; and (e) using Instagram if Meta "previously disabled your account for violation of law or any of [Instagram's] policies." Compl. ¶ 25; Duffey Decl. ¶ 10, Exs. 18-20. The Instagram Community Guidelines prohibit "impersonat[ing] others and . . . creat[ing] accounts for the purposes of violating our guidelines or misleading others." Compl. ¶ 26; Duffey Decl. ¶ 11, Exs. 21-30.

In addition to prohibiting Facebook and Instagram users from impersonating others and from posting content that infringes third parties' intellectual property rights or is otherwise unlawful, Meta also has a variety of measures and tools in place to help businesses facing harm on its platforms. Compl. ¶ 27. For example, Meta further makes available dedicated communication channels for rights holders to report posts or other user-generated content they believe to infringe their intellectual property rights, including dedicated reporting forms for trademark violations. *Id*

¶ 29.  Meta reviews these reports and, if a report is complete and valid, removes the reported content.  *Id.*  Meta also notifies both the reporter and the violating user of the fact of and reason for the removal.  *Id.*  Meta also makes available dedicated channels for persons to report impersonating accounts and Pages.  *Id.*

**C.      Chime's Trademark Rights and Measures to Protect Intellectual Property**

Chime is a well-recognized fintech company that delivers innovative financial technology products and services to its members, including offering various options for opening savings and spending accounts, allowing customers to utilize a CHIME-branded payment card in partnership with Visa, and offering a mobile app to allow customers to seamlessly manage their finances, transfer money and track spending.  *Id.* ¶¶ 30-31.  Since 2014, Chime has consistently and exclusively offered its products and services under the CHIME brand and has engaged in extensive advertising and promotion of its products and services in connection with the CHIME brand, logo, and trademarks (collectively, the "Chime Marks").  *Id.* ¶¶ 32-33.  Chime's extensive advertising and promotion, and its successful efforts in developing and providing innovative, trustworthy, and secure products and services in the fintech space, have resulted in the Chime Marks being instantly recognizable to the public as exclusively denoting Chime as the source of the products and services offered under the Chime Marks.  *Id.* ¶ 34.  In addition to being inherently distinctive, the Chime Marks have acquired substantial goodwill and strong secondary meaning and are enormously valuable assets of Chime, affording Chime strong common law rights in its marks.  *Id.*  Additionally, Chime currently has two pending trademark applications and two registrations for its Chime Marks with the United States Patent and Trademark Office covering a variety of mobile application and software products, debit and credit cards, financial services and related products and services.  *Id.* ¶ 35.  Each registered mark is in full force and effect and accordingly provides prima facie evidence of Chime's exclusive use, ownership, and validity of each such registration.  *Id.* ¶ 36.  Finally, Registration No. 4,728,805 for CHIME in Classes 9 and 36 has been acknowledged as incontestable under Section 15 of the Lanham Act, which provides conclusive evidence of Chime's right to exclusive use, ownership, and validity of the mark.  *Id.*

Chime has implemented several measures to protect its valuable intellectual property, hard-earned goodwill among consumers and sizeable portfolio of assets. *Id.* ¶ 37. Specifically, Chime utilizes brand enforcement services and protection tools to monitor and take down infringing use of the Chime marks on social media and the broader web, and even partners directly with registrars to engage in takedown initiatives. *Id.* ¶¶ 39-40. Chime also closely monitors use of its website, mobile applications, and technology platforms for suspicious activity and takes swift and appropriate measures to investigate and address unauthorized access to member accounts, and provides its account holders with the tools necessary to report suspicious activity and dispute unauthorized transactions. *Id.* ¶ 41.

**D.     Defendants' Phishing Scheme**

Since at least March 2020, Defendants have used a network of Facebook and Instagram accounts to impersonate Chime and lure Instagram users to Chime-branded phishing websites. *Id.* ¶¶ 44, 49. To conceal their scheme, Defendants used a shared network of computers to control at least five Facebook accounts and more than 800 Instagram accounts, in violation of Facebook's Terms of Service and Instagram's Terms of Use. Compl. ¶¶ 2, 7, 11-13, 20-26, 48. Many of these accounts used the Chime logo as their profile photo and the word "Chime" with varied spellings in the username, such as "_ch_im_e_" and "chime942," intended to escape Plaintiffs' enforcement efforts. *Id.* ¶ 48. The phishing websites also used, without authorization, the Chime Marks—including the Chime logo and the word mark "Chime"—and images taken from Chime's official website, purportedly to offer online banking services. *Id.* ¶¶ 45-46. These phishing websites prompted visitors to provide their Chime login information (email and password), which Plaintiffs believe the Defendants then used to withdraw money from their Chime accounts. *Id.* Chime has not authorized or licensed Defendants' use of its intellectual property, including but not limited to the Chime Marks. *Id.* ¶ 47.

**E.     Defendants' Agreement to Meta Terms and Breaches Thereof**

Beginning no later than March 2020, Defendants accepted and were bound by the Meta Terms. Defendants created and used multiple Facebook and Instagram accounts and agreed to the Facebook TOS and Community Standards and the Instagram TOU and Community Guidelines.

1   *Id.* ¶ 48.  Between no later than March 2020 and October 2021, Defendants used their network of

2   Chime-branded Facebook and Instagram accounts to impersonate Chime in violation of the Meta

3   Terms.  *Id.* ¶ 49.  As noted above, Defendants used Chime-branded usernames, domains, and/or

4   profile photos in connection with these accounts without Chime's authorization.  *Id.* ¶ 50, 51, 54.

5   For example, on July 28, 2020, Defendant Arowokoko created an Instagram account with the

6   username "chim_45."  *Id.* ¶ 50.  On the same day, Defendant Arowokoko changed the account's

7   username to "_ch_im_e_" and used the Chime logo, without Chime's authorization, as the

8   account's profile photo to advertise and promote purported online banking services.  *Id.*

9   On July 28, 2020, Defendant Arowokoko used this account to post an image featuring

10  Chime's logo and signature green color scheme as seen in Figure 4 in the Complaint, which was

11  copied from Chime's official Instagram account, for the purpose of duping unsuspecting

12  Instagram users into believing that Arowokoko's account was, in fact, a real Chime account or

13  was otherwise authorized by Chime, when it was not.  *Id.* ¶ 51.  On August 24, 2020, Meta

14  disabled Defendant Arowokoko's "_ch_im_e_" account for violating Instagram's TOU and

15  Community Guidelines.  *Id.* ¶ 52.  Chime has also taken action to disable Arowokoko's

16  unauthorized access to legitimate Chime member accounts.  *Id.* ¶ 53.

17  On July 18, 2020, Defendant Opeyemi created an Instagram account with the username

18  "chim_e55" and used the Chime logo, without Chime's authorization, as the account's profile

19  photo to advertise and promote purported online banking services, as seen in Figure 5 in the

20  Complaint.  *Id.* ¶ 54.  On July 18, 2020, Defendant Opeyemi used this account to post an image

21  featuring Chime's logo and signature green color scheme as seen in Figure 6 in the Complaint,

22  which was copied from Chime's official Instagram account, for the purpose of duping

23  unsuspecting Instagram users into believing that Opeyemi's account was, in fact, a real Chime

24  account or was otherwise authorized by Chime, when it was not.  *Id.* ¶ 55.  On July 19, 2020, Meta

25  disabled Defendant Opeyemi's "chim_e55" account for violating Instagram's TOU and

26  Community Guidelines.  *Id.* ¶ 56.  Chime has also taken action to disable Opeyemi's unauthorized

27  access to legitimate Chime member accounts.  *Id.* ¶ 57.

28  Since June 2020, Meta has taken multiple enforcement actions against Defendants for

violating the Meta Terms, including as recently as October 22, 2021. *Id.* ¶ 58. These include disabling Facebook and Instagram accounts and blocking Defendants' phishing websites from its services. *Id.* In addition, on July 9, 2021, Meta sent Defendants cease-and-desist letters notifying Defendants that their conduct violated the Meta Terms and revoked their access to Facebook and Instagram. *Id.* Nonetheless, Defendants continued to create new Chime-impersonating accounts. *Id.* In total, between June 5, 2020, and October 22, 2021, Meta disabled more than 800 Facebook and Instagram accounts belonging to Defendants and blocked phishing websites associated with Defendants and their scheme from being accessed on Facebook and Instagram. *Id.* ¶ 59.

**F.      The Filing of this Action and Subsequent Entry of Default**

On February 8, 2022, Plaintiffs filed their Complaint against Defendants Arowokoko and Opeyemi. Dkt. No. 1. On September 7, 2022, the Court granted Plaintiffs leave to serve Defendant Arowokoko with process by email at qiawxn3554@camrew.com, and Defendant Opeyemi with process by email at lekkispender@gmail.com. Dkt. No. 22 at 5. The Court found that "service via these email addresses is reasonably calculated to apprise Defendants of this lawsuit because these emails are likely associated with Defendants, the emails have recently been used in connection with Defendants' unlawful activity, and Plaintiffs have not been able to identify any physical locations where they could be served." *Id.* at 5. On September 19, 2022, Plaintiffs effected service on Defendants in accordance with the Court's Order and filed a Certificate of Service with the Court. Dkt. No. 25. Having been served on September 19, 2022, Defendants' responsive pleadings were due on October 11, 2022. Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants failed to meet that deadline. On October 18, 2022, Plaintiffs moved for entry default under Federal Rule of Civil Procedure 55(a) and notified Defendants of the same via the above-referenced email addresses. Dkt. No. 26. On October 20, 2022, the Clerk entered default. Dkt. No. 29. To date, Defendants have not appeared in this action or otherwise demonstrated any intention to defend against Plaintiffs' claims. Declaration of Caroline Y. Barbee ¶ 2.

**III.      DEFAULT JUDGMENT IS WARRANTED**

A district court may grant default judgment after the Clerk of the Court has entered a default. Fed. R. Civ. P. 55(b). A court's decision to enter a default judgment is discretionary.

*Tech. LED Intell. Prop., LLC v. Revogi, LLC*, No. 18-cv-03827-JSC, 2019 WL 2716610, at \*2 (N.D. Cal. June 27, 2019).  When a default judgment is sought against a non-appearing party, a court must examine its subject matter jurisdiction over the causes of action and its personal jurisdiction over the non-appearing party, including whether the "procedural requirement of service of summons" has been satisfied.  *Id.* (citation omitted).  Then, to determine whether a default judgment should be entered, courts consider the following *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at \*3-4 (alterations in original) (quoting *Eitel*, 782 F.2d at 1471-72).

### A.    The Court Has Jurisdiction to Enter Default Judgment

#### 1.    The Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims

Federal courts have original jurisdiction over all civil actions arising under the laws of the United States.  28 U.S.C. § 1331; *see also* Compl. ¶ 8. "Because [Chime] alleges federal trademark infringement under the Lanham Act, the Court has subject matter jurisdiction over [those causes of action]. As a result, the Court also has supplemental jurisdiction over [Plaintiffs'] related state law claims." *Viet. Reform Party v. Viet Tan - Viet. Reform Party*, 416 F. Supp. 3d 948, 961 (N.D. Cal. 2019) (citing 28 U.S.C. § 1367); *see also* Compl. ¶ 9.  This includes Meta's state law claim for breach of contract (Compl. ¶¶ 77-84), which arises out of the same common nucleus of operative facts as Chime's federal trademark claims: *i.e.*, all of the claims arise from Defendants' use of Facebook and Instagram accounts to impersonate Chime and lure Instagram users to Chime-branded phishing websites.  *Id.* ¶ 44; *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015) (court had supplemental jurisdiction over contract claim arising out of the same "common nucleus of operative facts" as infringement claims).  The Court also has diversity jurisdiction under 28 U.S.C. § 1332.  Complete diversity exists because Meta and Chime are citizens of California and Defendants Arowokoko and Opeyemi are citizens of Nigeria.  Compl. ¶¶ 3-6.  The amount in controversy also exceeds $75,000.  *Id.* ¶ 10.

2.      The Court Has Personal Jurisdiction Over Defendants.

a)      ***Defendants Consented to Personal Jurisdiction***

Defendants consented to personal jurisdiction when they created and used Facebook and Instagram accounts and thereby agreed to the forum selection clauses in the Meta Terms requiring them to submit to the personal jurisdiction of this Court. Compl. ¶¶ 11-13; Duffey Decl. ¶¶ 7, 10, Exs. 1-4, 18-20. A forum selection clause is construed as consent by the parties to the personal jurisdiction of the courts of the selected forum. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007). Forum selection clauses are equally applicable to contractual and tort causes of action. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir 1983)). Forum selection clauses are *prima facie* valid and specifically enforceable unless the party opposing the clause clearly shows "that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Here, the Meta Terms contain forum selection clauses requiring consent to personal jurisdiction in the Northern District of California. Duffey Decl. ¶¶ 7, 10, Exs. 1-4, 18-20. Defendants agreed to the Meta Terms when they signed up for and used their Facebook and Instagram accounts to promote their fraudulent phishing scheme, and therefore agreed to litigate all claims brought by Meta in this Court. Compl. ¶¶ 11-12, 20-26; *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *2 (N.D. Cal. Aug. 28, 2020) (Facebook's forum selection clause to exercise personal jurisdiction over Ukrainian nationals).

Defendants further consented to personal jurisdiction when they used websites, mobile applications, and/or technology platforms offered, operated, or made available by Chime, and therefore also agreed to the Chime Terms of Use, which likewise contain a forum selection clause requiring them to submit to the personal jurisdiction of this Court ("Chime TOU"). Compl. ¶13.

b)      ***Alternatively, the Court has Specific Jurisdiction Over Defendants***

Specific jurisdiction also exists based on Defendants' contacts with California. Personal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if its exercise would not violate federal due process. *In re W. States Wholesale Nat'l Gas Antitrust*

1  *Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).[1]  To satisfy due process, a nonresident defendant must

2  have minimum contacts with the forum such that asserting jurisdiction "does not offend traditional

3  notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

4  Specific jurisdiction in California exists whenever a defendant: (1) purposefully directed

5  activities at California or its residents or performed some act by which they purposefully availed

6  themselves of the privilege of conducting activities in California; (2) at least one claim arises out

7  of or relates to those activities; and (3) the exercise of jurisdiction is reasonable. *Brayton Purcell*

8  *LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).  A plaintiff bears the burden of

9  satisfying the first two prongs of the test, and upon doing so, shifts the burden to the defendant to

10  set forth a "compelling case" that the exercise of jurisdiction would not be reasonable.  *See Giotta*

11  *v. Ocwen Fin. Corp.*, No. 15-cv-00620-BLF,2015 WL 8527520, at *3 (N.D. Cal. Dec. 11, 2015)

12  (citation omitted); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

13  "[P]urposeful availment" and "purposeful direction" under the specific jurisdiction test are

14  distinct concepts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-03 (9th Cir.

15  2004).  A purposeful availment analysis is used in contract disputes; and a purposeful direction

16  analysis is used in cases alleging tort claims. *Id.*; *see also Panavision Int'l*, 141 F.3d at 1321

17  (finding trademark case "akin to a tort case").  The Complaint alleges both tort and contract

18  claims.  As to Meta's contract-based claim, this Court has personal jurisdiction over Defendants

19  because they purposefully availed themselves of the privilege of conducting business in

20  California; and as to Chime's tort-based claims, Defendants purposefully directed their activities

21  at California.  As to all claims, Defendants have not shown, and cannot show, unreasonableness.

        (i)      <u>Defendants Purposefully Availed Themselves of the Benefits</u>

<u>and Protections of Conducting Activities in California</u>

24  Defendants purposefully availed themselves of the benefits and protections of a California

25  forum.  "Parties who 'reach out beyond one state and create continuing relationships and

26  _____

27  [1] California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants
to the full extent permitted by the Due Process Clause of the United States Constitution. *See*
*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

28

obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'"  *Sluchevsky*, 2020 WL 5823277, at *3 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).  Here, Defendants knowingly directed and targeted their actions at California through their use of the services of Meta and Chime, which both have principal places of business in California.  Compl. ¶¶ 3-4.

Since at least March 2020, Defendants created and used multiple Facebook accounts and Instagram accounts.  *Id.* ¶¶ 7, 48, 59.  In total, Defendants controlled more than five Facebook accounts and more than 800 Instagram accounts across multiple devices.  *Id.* ¶ 59.  Each time Defendants created and used Facebook and Instagram accounts, they contracted with Meta in California and agreed to California law in the choice-of-law provision in the Meta Terms.  *Id.* ¶¶ 11-12; Duffey Decl. ¶¶ 7, 10, Exs. 1-4, 18-20.  Similarly, each time they used websites, mobile applications, and/or technology platforms offered, operated, or made available by Chime, they contracted with Chime in California and agreed to California law in the choice-of-law provision in Chime's TOU.  *Id.* ¶ 12; *see also Google, Inc. v. Eolas Techs. Inc.*, Nos. 13-cv-05997-JST, 13-cv-06003-JST, 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) (finding defendant's agreement to California choice-of-law provision evidenced purposeful availment); *Sluchevsky*, 2020 WL 5823277, at *3-4 (finding purposeful availment based, in part, on defendant's acceptance of California choice-of-law provision in Facebook Terms).  Moreover, Defendants' creation and use of the above-referenced Facebook and Instagram accounts created "ongoing obligations of both parties—'Facebook to allow [Defendants] to use its platform[s] . . . and [Defendants] to comply with Facebook's [terms]—[which] constitute a continuous course of dealing . . . that suffices to make a prima facie showing of purposeful availment."  *Id.* at *3-4 (citation omitted).

(ii)　　Defendants Purposefully Directed their Illegal Activities to California

Defendants also purposefully directed their activities to California by transacting business and engaging in commerce in California.  "Purposeful direction" exists when a defendant commits an intentional act expressly aimed at a forum that causes harm the defendant knows is likely to be felt and suffered in that forum.  *See Calder v. Jones*, 465 U.S. 783, 788-89 (1984); *see also Yahoo!*

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)

(adopting the *Calder* "effects" test).  Here, Defendants intentionally acted in a manner expressly

aimed at California by impersonating Chime, a California-based financial company, to lure

Instagram and Facebook users to Chime-branded phishing websites for the purpose of fraudulently

accessing funds entrusted to Chime.  Compl. ¶¶ 1, 4, 14, 45.  Further, the Chime-branded phishing

websites Defendants used in the scheme used a U.S.-based domain registrar and hosting provider.

*Id.* ¶¶ 14, 39; *see also Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1093-94 (N.D. Cal. 2014) (finding

purposeful direction where the defendant harmed "Yelp, a company he knew to be located in

California, by . . . using Yelp's registered trademarks" and by "confusing [Yelp's] customers");

*Facebook, Inc. v. Banana Ads LLC*, No. CV 11-03619-YGR (KAW), 2013 WL 1873289, at *4

(N.D. Cal. Apr. 30, 2013) (finding purposeful direction where "Defendants targeted Facebook, a

company they knew to be located in California, by registering infringing domain names similar to

facebook.com, and using them to divert Internet users attempting to reach Facebook's website");

*CollegeSource*, 653 F.3d at 1077 (finding "expressly aimed" prong can be met where plaintiff

alleges that defendant individually targeted plaintiff by misusing plaintiff's intellectual property

on defendant's website for the purpose of competing with the plaintiff in the forum.); *Mavrix*

*Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1222, 1227-32 (9th Cir. 2011) (finding

purposeful direction where, among other things, defendant had several agreements with California

businesses related to operation of defendant's website, including an agreement with a news site,

web designer, and internet advertising agency that placed advertisements on the website, and a

wireless provider that hosted a mobile version of the defendant's website for its users).

(iii)   <u>Plaintiffs' Claims Arise from Defendants' Forum Related</u>

<u>Activities</u>

The "arising from" requirement is satisfied here because Plaintiffs would not have been

injured "but for" Defendants' forum-related activities, including (1) the duties Defendants

undertook and breached when they contracted with Meta in order to impersonate Chime, and (2)

Defendants' infringing use of California-based Chime's name and marks to lure Instagram and

Facebook users, including users residing in California, to Chime-branded phishing websites for

the purpose of fraudulently accessing funds entrusted to Chime.  Compl. ¶¶ 1, 4, 13-14, 42-43, 45; *see Learjet Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013); *see also, e.g.*, *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1400 (9th Cir. 1986) (finding "aris[ing] out of" requirement satisfied because plaintiff's claim arose out of insurance contract between the defendant and a third party, which constituted the defendant's contact with California).  Moreover, Defendants expressly targeted California entities in Meta and Chime, caused Meta and Chime to expend significant time and resources to combat the Defendants' unlawful activity, and damaged the goodwill among Meta and Chime's users, all in a manner that caused harm felt in California.  *See CollegeSource*, 653 F.3d at 1079 (noting that "a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business"); *Nissan Motor Co. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1160 (C.D. Cal. 2000) (defendant's exploitation of plaintiffs' goodwill had effect of injuring plaintiff in California.).  This element is thus satisfied.

(iv)    Defendants Cannot Show Unreasonableness

"Because the first two requirements for exercising specific personal jurisdiction ha[ve] been established," Defendants must present a "compelling case" that the assertion of jurisdiction would be unreasonable.  *See Yelp Inc.*, 70 F. Supp. 3d at 1082, 1094.  Defendants, however, have "waived [their] opportunity to make this showing by failing to participate in this litigation."  *Id.*  In any event, because Defendants specifically targeted California companies through their illicit activities and conducted business in California, Defendants "had 'fair warning' that [they] might be sued in California."  *Id.*  Accordingly, the assertion of specific personal jurisdiction is proper.

(c)    ***Pendent Personal Jurisdiction is Proper***

To the extent the Court finds that personal jurisdiction is proper in connection with only one Plaintiff's claim(s), the Court may exercise pendent personal jurisdiction over the other Plaintiff's claim(s).  "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  *Action Embroidery v. Atl. Embroidery*, 368 F.3d 1174, 1180-81 (9th Cir. 2004); *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 827

1    (N.D. Cal. 2014) (exercising pendent personal jurisdiction over state law contract claims along

2    with federal tort-based claims because the claims were based on the same common factual

3    predicates).  Here, Meta's state law claim for breach of contract arises out of the same common

4    nucleus of operative facts as Chime's federal trademark claims: *i.e.*, Defendants' use of Facebook

5    and Instagram accounts to impersonate Chime and lure Instagram users to Chime-branded

6    phishing websites, such that the exercise of pendent personal jurisdiction would be proper.

3.    Service of Process Was Proper and Default Has Been Entered

7

8        The Court previously found that service of process by email on Defendant Arowokoko at

9    qiawxn3554@camrew.com, and on Defendant Opeyemi at lekkispender@gmail.com was proper.

10   Dkt. No. 22.  The Defendants were served at those email addresses, per the Court's Order.  Dkt.

11   No. 25.  Accordingly, service of process was proper. *See Distinct Media Ltd. v. Shutov*, 2017 WL

12   1234400, at *3 (N.D. Cal. Mar. 10, 2017) (granting default judgment where court previously

13   found that service of process was in compliance with Fed. R. Civ. P. 4(f)(2)(C)).  After proper

14   service, Defendants did not respond to the Complaint, and the Clerk entered default.  Dkt. No. 29.

15   **B.    The *Eitel* Factors Weigh Heavily in Favor of Default Judgment**

16   1.    Plaintiffs Will Be Severely Prejudiced Absent Default Judgment

17       The first *Eitel* factor considers "whether the plaintiff will suffer prejudice if the court

18   denies default judgment."  *Baskin-Robbin*s, 2020 WL 2616576, at *7.  If the Court does not enter

19   default judgment against Defendants, Plaintiffs would be severely prejudiced "because, in the

20   absence of a default judgment, plaintiff[s] 'would be without other recourse for recovery' to which

21   [they are] entitled."  *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal.

22   2010) (citation omitted) (finding prejudice for trademark and breach of contract claims); *see also*

23   *Christofferson v. All Pure Pool Serv. of Cent. California, Inc.*, 2020 WL 3249323, at *11 (E.D.

24   Cal. June 16, 2020) (finding plaintiffs would effectively be denied a remedy for repeated contract

25   violations until such time as Defendants decided to appear, which may never occur); *Craigslist,*

26   *Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1059 (N.D. Cal. 2010) (finding that denial of

27   injunctive relief would leave plaintiff with no means to prevent further infringement).

28   Accordingly, this factor favors granting default judgment.

2.      Plaintiffs' Claims are Meritorious and Well-Founded

"Under the second and third *Eitel* factors the Court must examine whether the Plaintiff has plead facts sufficient to establish and succeed upon its claims." *Craigslist, Inc.*, 694 F. Supp. 2d at 1055.  As stated above, the "well-pleaded factual allegations in the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party." *Tech. LED Intell.*, 2019 WL 2716610, at *3.  As a consequence, the "district court is not required to make detailed findings of fact."  *Id.* (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)).

(a)      ***Chime's Claims are Meritorious and Well-Founded***

(i)      Counterfeiting and Trademark Infringement

Chime's counterfeiting and trademark infringement claims are meritorious and well-founded.  To prevail on a claim of counterfeiting and trademark infringement, a holder of a registered service mark must show that the defendant is using: "(1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive."  *See Gucci Am. v. Wang Huoqing*, No. C-09-05969 JCS, 2011 WL 31191, at *9 (N.D. Cal. Jan. 3, 2011) (citing Lanham Act 15 U.S.C. § 1114(1));[2] *see also Microsoft Corp.*, 703 F. App'x at 479 (finding that marketing of counterfeit software as authentic established a likelihood of confusion); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) (affirming the district court's finding that "[t]here is a likelihood of confusion . . . when the offending mark is a counterfeit mark").

Here, Chime is the owner of two federal trademark registrations covering the word mark CHIME, two applications covering the CHIME logo, and common law rights in and to the Chime Marks.  Comp. ¶¶ 34-36.  Chime's federal trademark registrations are prima facie evidence of the validity of the subject marks and shift the burden to Defendants to introduce evidence sufficient to

---

[2] Counterfeiting requires a heightened degree of similarity between marks and requires the questioned mark to be "a spurious mark [that is] identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  Otherwise, the analysis for assessing counterfeiting and garden variety of trademark infringement are the same.  *See Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 479 (9th Cir. 2017) (finding that the analysis for such claims is identical).

rebut the presumption of validity. *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 13 F.3d 1297, 1301 (9th Cir.1994), *rev'd on other grounds by* 514 U.S. 159 (1995). Defendants have introduced no such evidence. Nor has Chime consented to Defendants' use of the Chime Marks. And there is no question that Defendants have used the Chime Marks in interstate commerce in connection with the sale, offering for sale, distribution, or advertising of services, as they have made unauthorized infringing use of the Chime Marks on phishing websites and on Facebook and Instagram to falsely advertise and promote purported online banking services. Compl. ¶ 46-47, 49-55.

With respect to the final prong of the infringement analysis, this Circuit considers eight factors to determine whether a likelihood of confusion exists: (1) the strength of the mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) the evidence of actual confusion; (5) the marketing channels used; (6) the degree of consumer care; (7) the defendant's intent in selecting the mark, and; (8) the likelihood of expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979). Courts have held that only factors relevant to the situation at hand need be considered, as "[o]nly a subset of the *Sleekcraft* factors are needed to reach a conclusion as to whether there is a likelihood of confusion." *Zest Anchors, LLC v. Geryon Ventures, LLC*, 2022 WL 2811646, at *15 (S.D. Cal. July 18, 2022). However, the "similarity of the marks," "relatedness of the goods" and "common marketing channel" factors are consistently given more weight than others, constituting "the controlling troika in the *Sleekcraft* analysis." *Id.*

Here, the Chime Marks are strong, both inherently and as a result of Chime's advertising and promotional efforts and several years of substantially exclusive use. Compl. ¶¶ 31-34. Defendants copied the Chime Marks wholesale, including Chime's logo and signature green color. Defendants' phishing scheme, disguised as online banking services, incorporates ***exact*** copies of the Chime logo and marks and advertises non-existent online banking services to consumers through channels that are identical to those used by Chime, including Instagram. *Id.* ¶¶ 43-47.

Due to the identical nature of the marks, services, and targeted audience, it is highly likely that consumers have fallen victim to Defendants' phishing scheme and have been misled as to the source of Defendants' purported online banking services. Compl. ¶¶ 44-45. Since at least as early as March 2020, Defendants used a network of Instagram accounts to impersonate Chime by using

the Chime logo, the word "Chime" in website URLs, and images copied directly from the official Chime website, to lure consumers to fake websites to input personal information.  *Id.*  "When [a defendant] knowingly adopts a mark similar to [the plaintiff's], reviewing courts presume that the defendant can accomplish [its] purpose: that is, that the public will be deceived."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006) (citation omitted).

Although the 9th Circuit "do[es] not bean count," it is significant that six of the eight *Sleekcraft* factors support a likelihood of confusion; the remaining two are either neutral or irrelevant. *Au-Tomotive Gold, Inc.,* 457 F.3d at 1078.  Additionally, "[w]here . . . one produces counterfeit goods 'in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a ***presumption*** of a likelihood of confusion.'"  *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (emphasis added); *see also Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985).

In consideration of the strength of the Chime Marks and Defendants' intentional and exact copying of the marks, a likelihood of confusion has undoubtedly been demonstrated and Defendants' infringing conduct fits squarely within the definition of federal counterfeiting, which is "'hard core' or 'first degree' trademark infringement . . . . 'that seeks to trick the consumer into believing he or she is getting the genuine article.'"  *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 607 (C.D. Cal. 2017) (citation omitted).  Moreover, Defendants' use of the Chime Marks is willful, in bad faith, and conducted with full knowledge of the goodwill and reputation associated with Chime.  Compl. ¶ 64.  Defendants are aware that they have no right, license, or authority to use the Chime Marks, but intend to reap the benefits of the goodwill that Chime has created in its marks.  *Id.* ¶ 65. Defendants' actions constitute federal trademark infringement and counterfeiting.  Any further use of these counterfeit marks by Defendants risks irreparable harm not only to Chime's marks and goodwill, but also to the consuming public.  Compl. ¶¶ 66, 72, 76.

(ii)     Unfair Competition

Chime's unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is equally meritorious and well-founded.  A claim for federal unfair competition may be predicated on the actions of any person who, "on or in connection with any goods or services . . .

uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of [the person's] goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).  The test for unfair competition is exactly the same as for trademark infringement: whether consumers are likely to be deceived or confused by the similarity of the marks.  *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

As previously discussed, consumers are likely to be deceived and confused by Defendants' use of identical Chime marks across the web and social media platforms, like Instagram, to advertise purported online banking services.  Defendants' use of the Chime Marks in connection with their illegitimate phishing scheme and fraudulent services jeopardizes the value, exclusivity, and reputation of the Chime Marks, and creates unfair competition in the marketplace.  Compl. ¶ 75.  Defendants' conduct has caused and continues to cause immediate and irreparable injury to Chime and will continue to damage Chime and deceive the public unless enjoined.  *Id.* ¶ 76.

(b)   <strong><em>Meta's Breach of Contract Claim is Meritorious and Well-Founded</em></strong>

Meta's breach of contract claim is likewise meritorious and well-founded.  To state a claim for breach of contract under California law, Meta need only allege facts showing: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damage to plaintiff resulting therefrom.  *Craigslist, Inc.*, 694 F. Supp. 2d at 1059.  Meta has pled facts satisfying all four elements.

***First***, valid contracts exist between Meta and Defendants. Defendants agreed to the Meta Terms by accessing and using Facebook and Instagram.  Compl. ¶¶ 11-12, 20-26.  These allegations, taken as true, are sufficient to establish the existence of a contract under California law.  *See Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 970 (N.D. Cal. 2015) ("Grunin agreed to Facebook's Terms when he created a Facebook account and accessed Facebook's services."); *Yelp Inc.*, 70 F. Supp. 3d at 1099 ("Here, the Yelp terms of service is a contract."); *Craigslist, Inc.*, 694 F. Supp. 2d at 1059 ("Plaintiff has alleged that the TOUs existed as a valid contract between it and all users, including the Defendants.").

*Second*, Meta has "performed all conditions, covenants, and promises required of it in accordance with its agreements with Defendants" by allowing Defendants to use Facebook and Instagram, until Meta became aware that they were in breach of the Meta Terms.  Compl. ¶¶ 11-12, 20-26, 44-57, 81.  These allegations are sufficient under California law.  *See Yelp Inc.*, 70 F. Supp. 3d at 1099 ("Yelp has performed all conditions, covenants, and promises required on its part in accordance with the terms of service."); *Craigslist, Inc.*, 694 F. Supp. 2d at 1059 ("Plaintiff performed by offering and allowing online posting for classified ads.").

*Third*, Defendants breached the Meta Terms by: (a) using their Facebook and Instagram accounts to impersonate Chime, mislead and defraud users, and infringe the intellectual property rights of Chime, in violation of Section 3.2.1 (a-c) of the Facebook TOS, Facebook Community Standards, the Instagram TOU, and Instagram Community Guidelines; (b) creating multiple Facebook accounts and continuing to use Facebook after Meta disabled their accounts for violating the Facebook TOS, in violation of Section 3.1 of the Facebook TOS; and (c) continuing to use Instagram after Meta disabled their account for violating the Instagram TOU, in violation of the Instagram TOU.  Compl. ¶¶ 20-29, 49-57, 80, and 83.

*Fourth*, Defendants' "many breaches have caused Meta to incur damages." *Id.* ¶ 82.  This allegation is sufficient to satisfy the fourth element for breach of contract under California law. *See Yelp Inc.*, 70 F. Supp. 3d at 1099 ("As a result of this breach, Catron has caused damage to Yelp."); *Craigslist, Inc.*, 694 F. Supp. 2d at 1059 ("As a direct result of Defendants' actions, Plaintiff suffered monetary and other damages.").  Accordingly, Meta's breach of contract claim is meritorious and well-founded.

### 3.   The Damages Sought Supports a Default Judgment

Under the fourth *Eitel* factor, a "[c]ourt must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *Tech. LED Intell.*, 2019 WL 2716610, at *4 (citing *Eitel*, 782 F.2d at 1471-72).  "[D]efault judgment [is] appropriate where [the amount] is 'tailored to [the defendant's] specific misconduct.'" *Id.* Here, even though they are entitled to them, neither Plaintiff seeks monetary relief through this motion.  Rather, as set forth below, both seek injunctive relief only.  Accordingly, this factor strongly favors granting default judgment.

1

#### 4.   There is No Dispute as to Any Material Fact

Under the fifth *Eitel* factor, courts consider whether material facts are in dispute.  *Tech. LED Intell.*, 2019 WL 2716610, at *4.  Here, there are no facts in dispute.  "Upon the Clerk's entry of default, Defendants were 'deemed to have admitted all well-pleaded allegations' in the complaint."  *Baskin-Robbins*, 2020 WL 2616576, at *9; *see also Coach, Inc. v. Diana Fashion*, No. 11-2315 SC, 2011 WL 6182332, at *3 (N.D. Cal. Dec. 13, 2011) ("Defendants have not responded to any of the proceedings in this case, and thus no dispute has been raised regarding the material averments of the Complaint.").

#### 5.   Defendants Have Not Established Excusable Neglect

The sixth *Eitel* factor considers whether default was entered as a result of excusable neglect by Defendants.  *Tech. LED Intell.*, 2019 WL 2716610, at *6.  This factor favors the entry of a default judgment "where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit."  *Baskin-Robbins*, 2020 WL 2616576, at *9 (quoting *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012)).  Here, despite being properly served with the summons and Complaint and entry of default at email addresses known to be used by them, Defendants have "made no appearance in this [action]."  *Yelp Inc.*, 70 F. Supp. 3d at 1100; *see also Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008) (finding factor weighed in favor of default where defendants had not "made an appearance or participated in any manner in this action"); *Facebook, Inc. v. Kokhtenko*, No. 21-cv-03036-YGR (LB), 2021 WL 7448619, at *7 (N.D. Cal. Dec. 3, 2021) ("[D]efendant has not presented a defense or otherwise communicated with the court. . . . [T]his factor supports default judgment."), *report and recommendation adopted as modified by* No. 21-cv-03036-YGR, 2022 WL 1195439 (N.D. Cal. Feb. 18, 2022). On those facts, "[t]here is no basis here to conclude that [Defendants Arowokoko and Opeyemi's] default resulted from excusable neglect." *Tech. LED Intell.*, 2019 WL 2716610, at *5.  There is consequently no evidence of a factual dispute or excusable neglect; thus, this factor supports default judgment.

#### 6.   A Decision on the Merits is Impractical, if not Impossible

The final *Eitel* factor balances the entry of default judgment against the preference for

1    deciding cases on the merits.  *Eitel*, 782 F.2d at 1472.  "This factor is not dispositive, however,

2    and a defendant's failure to answer the complaint 'makes a decision on the merits impractical, if

3    not impossible.'"  *Baskin-Robbins*, 2020 WL 2616576, at *10 (citation omitted).  As this Court

4    has held, "termination of a case before hearing the merits is permissible when a defendant fails to

5    defend an action."  *Id.*  Given Defendants' failure to appear, a "decision on the merits is

6    impossible."  *Id.*  Accordingly, all the *Eitel* factors weigh in favor of default judgment.

7          **C.**      **<u>Plaintiffs are Entitled to Injunctive Relief, Damages, Profits, Fees, and Costs</u>**

8          Under Federal Rule of Civil Procedure 54(c), a default judgment may include remedies

9    that do not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Both

10   here and in the Complaint, Plaintiffs seek permanent injunctive relief.

11         1.      Chime is Entitled to Permanent Injunctive Relief

12         "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since

13   there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."

14   *Century 21 Real Est. Corp.*, 846 F.2d at 1180-81; 15 U.S.C. § 1116(a).  Under the Lanham Act, the

15   Court has the "power to grant injunctions according to the rules of equity and upon such terms as

16   the court may deem reasonable, to prevent violation" of Plaintiff's rights.  *Viet. Reform Party*, 416

17   F. Supp. 3d at 971.  A plaintiff is entitled to a permanent injunction in a trademark case when it

18   demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such

19   as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance

20   of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

21   public interest would not be disserved by a permanent injunction."  *Facebook, Inc. v. Sahinturk*,

22   2022 WL 1304471, at *11 (N.D. Cal. May 2, 2022) (quoting *eBay Inc. v. MercExchange, L.L.C.*,

23   547 U.S. 388, 391 (2006)).  As to irreparable injury, the Lanham Act provides that "[a] plaintiff

24   seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a

25   finding of a violation identified in this subsection in the case of a motion for a permanent

26   injunction."  *Sahinturk*, 2022 WL 1304471, at *11; *see also* 15 U.S.C. § 1116(a).

27         In addition to presumed irreparable harm, Chime has suffered intangible injuries. The Ninth

28   Circuit recognizes that "intangible injuries," including loss of goodwill, can constitute irreparable

harm.  *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-cv-04773-EJD, 2020 WL 5199434, at *8 (N.D. Cal. Aug. 17, 2020) (citation omitted); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  As previously discussed, Chime has a high degree of consumer recognition within the fintech space and has built up a significant amount of goodwill in the Chime Marks.  Compl. ¶¶ 31, 34.  Defendants have intentionally and unlawfully traded on that goodwill to deceive consumers, eroding Chime's goodwill in the Chime Marks.  *Id.* ¶¶ 64-65.  Accordingly, Chime has shown irreparable harm.

Moreover, monetary damages are inadequate to prevent future infringement.  The Defendants' failure to respond to or otherwise defend this action, or to provide assurances to the Court that they will no longer engage in infringing conduct, signifies that their infringement will continue regardless of the many time-consuming and expensive protective measures implemented by Chime.  And there is no evidence that Defendants will suffer any hardship apart from ceasing to profit from their unlawful conduct, which is not considered a hardship for purposes of granting a permanent injunction.  *See Cisco Sys., Inc.,* 2020 WL 5199434, at *9 ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" (quoting, *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (superseded on other grounds))).

Finally, granting a permanent injunction will serve the public interest in enforcing and protecting trademark holders' rights, and will further protect the integrity of Chime's business and its users whose confidential information is being misappropriated through infringement.  *See Stackla, Inc. v. Facebook Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019) (holding that Facebook's ability to police the integrity of its platforms is "without question a pressing public interest").  Accordingly, the four requirements for a permanent injunction are met, and Chime has established success on the merits for its counterfeiting, trademark, and unfair competition claims.

2.    Meta is Entitled to Permanent Injunctive Relief

"[I]t is appropriate to grant an injunction on an application for default judgment" consistent with the demands of the Complaint.  *Craigslist, Inc. v. RealWorks Grp. LLC*, No. C 08-05072 JW, 2009 WL 10692489, at *5 (N.D. Cal. Oct. 29, 2009).  "A plaintiff may . . . be entitled to injunctive

relief for a breach of contract claim under California law," as long as the contract is one for which specific performance is an available remedy. *See Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF, 2019 WL 3387977, at *12 (N.D. Cal. July 26, 2019); Cal. Civ. Code §§ 3422, 3423(e). Here, specific performance is an available remedy under the Meta Terms. *See Kokhtenko*, 2022 WL 1195439, at *1 (granting default judgment on Facebook's breach of contract claim and issuing permanent injunction).

Specific performance is available where the plaintiff shows: "(1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983). All five elements are met here.

*First*, Meta has established that a legal remedy would be inadequate here, evidencing that the first element of specific performance is met. *See* Cal. Civ. Code § 3422(a) (permitting a "final injunction" where "pecuniary compensation would not afford adequate relief"). Prior to the filing of this lawsuit, Defendants had already created and used *more than 5 Facebook accounts and 800 Instagram accounts* to engage in unlawful activity, in breach of the Meta Terms. Compl. ¶¶ 7, 48, 59 (emphasis added); *see Grunin*, 77 F. Supp. 3d at 973 (finding irreparable harm where Facebook terminated more than seventy accounts associated with defendant).

Defendants have demonstrated a pattern of creating new Instagram accounts after previously created accounts have been suspended or disabled, with the links between the accounts evidencing a pattern of recidivism and attempts to bypass Meta's prior enforcement efforts. Compl. ¶ 2. Given this pattern of recidivism, there is a high likelihood that, absent injunctive relief, Defendants will continue to breach the Meta Terms, which will require Meta to expend significant resources—indefinitely—to find and counteract their unlawful activity. Declaration of Andrew Herter ¶¶ 2-3. In such cases, California courts agree that legal remedies are inadequate, as future breaches will require future expenditures and litigation. *See, e.g.*, *Union Oil Co. of Cal. v. Greka Energy Corp.*, 165 Cal. App. 4th 129, 136 (2008) (where a party commits multiple

breaches, specific performance is preferred over the inadequate remedy of repetitive future damage actions); *Tamarind Lithography*, 143 Cal. App. 3d at 575 (future contractual violations might be deemed a continuous breach creating danger of untold number of lawsuits).

*Second*, Meta has established that the Meta Terms are valid and have been breached, evidencing that the second element of specific performance is met. *See* Section III.B.2.b above; Compl. ¶¶ 17-18, 47, 80; *Grunin*, 77 F. Supp. 3d at 970 (defendant's creation and use of Facebook created a valid contract based on the Facebook terms, which was breached when defendant violated the same); *Sluchevsky*, 2020 WL 5823277, at *7 (same); *Tamarind Lithography*, 143 Cal. App. 3d at 575 (need for finding a contract reasonable and supported by adequate consideration is obviated where there has been a determination of the defendant's breach of that contract).

*Third*, the element of "requisite of mutuality of remedy has been satisfied in that [Meta] has fully performed [its] obligations pursuant to the agreement,"—*i.e.*, it permitted Defendants to access and use Facebook and Instagram until it discovered they breached the Meta Terms. *See* Compl. ¶¶ 44, 47-50, 86; *Henderson v. Fisher*, 236 Cal. App. 2d 468, 473 (1965) (holding for there to be "mutuality of remedies," the "contract must be subject to specific performance by both of the contracting parties"); *Tamarind Lithography*, 143 Cal. App. 3d at 577 ("The requisite of mutuality of remedy has been satisfied in that [the party seeking specific performance] had fully performed his obligations pursuant to the agreement . . . ."); *Kokhtenko*, 2021 WL 7448619, at *6 (finding Facebook "performed all conditions, covenants, and promises required of it in accordance with their [user] agreements with Defendant" by allowing access and use of its platforms).

*Fourth*, the Meta Terms' terms are definite, and the requested injunction tracks the exact language of the Meta Terms, thereby satisfying the fourth and fifth elements of specific performance. Meta seeks an order enjoining Defendants "and their agents, servants, employees, successors, and assigns, and all other persons acting in concert or conspiracy with any of them or who are affiliated with Defendants from . . . [a]ccessing or attempting to access Meta's services, platforms, and computer systems, including Facebook and Instagram." Compl. at Request for Relief ¶ 2(a). This relief is supported by the Meta Terms. The Facebook TOS provides that if Meta "determine[s] that you have clearly, seriously or repeatedly breached [the Facebook TOS] or

Policies … [Meta] may suspend or permanently disable access to your account. [And] may also suspend or disable your account if you repeatedly infringe other people's intellectual property rights[.]"  Duffey Decl. ¶ 7, Exs. 1-4.  Similarly, the Instagram TOU specifically provides that Meta "can refuse to provide or stop providing all or part of the [Instagram] Service to you (including terminating or disabling your access to the [Meta] Products and [Meta] Company Products) immediately … if you … violate [the Instagram TOU] or [Meta's] policies … [or] if you repeatedly infringe other people's intellectual property rights[.]"  *Id.* ¶ 10, Exs. 18-20.

Because Meta has established its entitlement to an injunction under California law, the Court must "apply traditional equity principles and inquire whether [Meta] has demonstrated: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"  *Twitch Interactive*, 2019 WL 3387977, at *11 (citation omitted).  Meta has already satisfied the first two elements in connection with its showing on the first specific performance factor above.

As to the remaining two elements, Meta has easily satisfied those as well.  Defendants have not appeared in this action and have not established that they would suffer *any* hardship by being prohibited from using Facebook or Instagram in the future.  *See id.* ("Defendants are in default and have not demonstrated that they would incur any hardship from being permanently enjoined against infringing Twitch's trademarks or violating the Terms.").  And "the public is not disserved by a permanent injunction, particularly because the public may have been deceived and harmed by [Defendants'] trademark infringement and offering of automated bots. As such, equity favors the entry of a permanent injunction against [Defendants]."  *See id.* at *12; *see also Grunin*, 77 F. Supp. 3d at 973 ("[T]he public would not be disserved by prohibiting Grunin from posting . . . deceptive ads on Facebook.").

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion and enter the proposed default judgment and permanent injunction filed concurrently herewith.

1    DATED:  January 18, 2023          Respectfully submitted,

2
                                       KILPATRICK TOWNSEND & STOCKTON LLP
3

4                                      By: */s/ Caroline Y. Barbee*
                                           DENNIS L. WILSON
5                                          CAROLINE Y. BARBEE

6                                      Attorneys for Plaintiff
                                       META PLATFORMS, INC.
7
     DATED:  January 18, 2023          Respectfully submitted,
8
                                       BAKER BOTTS L.L.P.
9

10                                     By: */s/ Sarah Guske*
                                           SARAH GUSKE
11                                         SUZANNE HENGL

12                                     Attorneys for Plaintiff
                                       CHIME FINANCIAL, INC.
13

14                   **ATTESTATION REGARDING SIGNATURES**

15         Pursuant to Local Rule 5-1(h)(3) regarding signatures, I attest under penalty of perjury that I

16   have on file permission to sign for counsel indicated by a conformed signature within this e-filed

17   document.

18

19   DATED:  January 18, 2023          Respectfully submitted,

20                                     KILPATRICK TOWNSEND & STOCKTON LLP

21
                                       By: */s/ Caroline Y. Barbee*
22                                         DENNIS L. WILSON
                                           CAROLINE Y. BARBEE
23
                                       Attorneys for Plaintiff
24                                     META PLATFORMS, INC.

25

26

27

28

MOTION FOR DEFAULT JUDGMENT                                              - 26 -
CASE NO.:  4:22-cv-00803-DMR